UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANCHIDER CHARISME (A-Number: 243-052-225),<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, *et al.*,<br><br>Respondents. | Case No. 1:26-cv-6595-DC-JDP<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner Anchider Charisme, a citizen of Haiti, entered the United States without permission prior to 2022, and applied for temporary protected status, which immigration authorities approved in April 2023. Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241 alleging that his detention violates due process. Respondents have moved to dismiss the petition. For the following reasons, I recommend that the petition be granted, that respondents' motion to dismiss be denied, and that petitioner be immediately released.

**Background**

Petitioner, a citizen of Haiti, entered the United States without inspection. ECF No. 6 at 12. On April 27, 2023, immigration authorities approved petitioner's application for temporary protected status ("TPS") and provided him employment authorization, which remains current.

ECF No. 6 at 13. On April 30, 2026, immigration authorities denied petitioner's TPS renewal application.[1] *Id.* Petitioner's 2022 asylum application is still pending. *Id.* at 14. Petitioner has a U.S. citizen child. *Id.* at 12, 14.

On May 12, 2023, petitioner was arrested in Florida for attempted sexual battery and burglary of an occupied dwelling. ECF No. 6 at 20-21. On January 19, 2024, petitioner pled *no lo contendere* to one count of attempted burglary of a dwelling in Florida. *Id.* at 14, 16. The state court withheld adjudication and placed petitioner on a term of probation for that offense.[2] *Id.* at 13, 16. The prosecutor dismissed the burglary of a dwelling and attempted sexual battery charges. *Id.* at 17.

On July 10, 2026, ICE officers encountered petitioner at a Florida probation office and took him into custody. ECF No. 6 at 30. A deportation officer determined that petitioner would be detained in immigration custody. *Id.* at 32. The deportation officer stamped the form as "refuse to sign." *Id*. Petitioner has been detained since that date without a bond hearing. ECF No. 6 at 2.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.

[1] Neither party explains the basis for the denial. I note that Secretary of Homeland Security issued a termination of TPS designation for Haiti in November 2025, although that decision was tied up in litigation until June 25, 2026. *See* Termination of the Designation of Haiti for Temporary Protected Status, 90 Fed. Reg 54733 (Nov. 28, 2025); *Mullin v. Doe*, 146 S. Ct. 2121, 2137 (2026) (reversing lower court decisions that enjoined the termination of TPS for Haiti).

[2] Florida Statute § 948.01(2) grants a judge the discretion to impose a probationary sentence and withhold the adjudication of guilt "[i]f it appears to the court upon a hearing of the matter that the defendant is not likely again to engage in a criminal course of conduct and that the ends of justice and the welfare of society do not require that the defendant presently suffer the penalty imposed by law . . . ."

28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his detention violates the Due Process Clause.[3] ECF No. 1 at 7. Notably, respondents do not address petitioner's due process claim and instead move to dismiss on the basis that petitioner has not requested a bond hearing in immigration court. ECF No. 6 at 2. Respondents state that the basis for petitioner's detention is 8 U.S.C. § 1226(a), which permits release on bond. *Id.* at 3.

Principally, respondents argue that because petitioner has not sought a bond hearing in immigration court under section 1226(a), his petition should be dismissed for failure to exhaust. ECF No. 6 at 2. Section 2241 does not require exhaustion of administrative remedies prior to filing a habeas petition. *Compare* 28 U.S.C. § 2241 *with* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of state court remedies). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (citation omitted). The exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004). I find that relief from the prudential exhaustion requirement is warranted in this case.

First, I note that petitioner's notice to appear ("NTA") alleges as one of several grounds

[3] Petitioner's pro se filing is entitled to liberal construction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Charan S. v. Warden of the Cal. City Det. Facility*, No. 1:26-cv-3017-TLN-JDP, 2026 WL 1144158, at *1 n.1 (E.D. Cal. Apr. 28, 2026) (applying liberal construction to pro se immigration habeas filing).

for removal that petitioner was convicted of a crime involving moral turpitude. ECF No. 6 at 10. If accurate, that allegation requires mandatory detention of petitioner without bond pursuant to 8 U.S.C. § 1226(c)(1)(A). Despite this allegation in the NTA, respondents argue that petitioner is removable because he "entered without inspection and did not have valid immigration entry documents" and do not argue that section 1226(c) applies. ECF No. 6 at 3. Until respondents filed their motion to dismiss, petitioner would not have known that the government no longer advanced that theory of detention and removal and that it considered him detained under section 1226(a). If petitioner had requested a bond hearing under section 1226(a), respondents do not explain how the immigration judge would have known that he was detained under that section. In these circumstances, I find that it would have been futile for petitioner to request a section 1226(a) hearing. *See Laing*, 370 F.3d at 1000.

Further, "an exception to the exhaustion requirement has been carved for constitutional challenges to the Immigration and Naturalization Act and INS procedures because the BIA does not have jurisdiction to determine the constitutionality of the statutes it administers." *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) (cleaned up); *see also Matter of Fede*, 20 I. & N. Dec. 35 (BIA 1989) (explaining why neither an immigration judge nor the BIA have the legal authority to consider constitutional challenges to the immigration regulations they administer). As the administrative remedies are not adequate to address petitioner's due process challenge to his re-detention, I find that exhaustion should be waived. *See Zhou v. Warden, Cal. City Immigr. Processing Ctr.*, No. 1:26-cv-6527-DAD-CSK, 2026 WL 2445606, at *1 (E.D. Cal. Aug. 20, 2026) (waiving exhaustion for a petitioner who had not requested a hearing under *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999) before challenging his re-detention on constitutional grounds); *Gutierrez Romo v. Chestnut*, No. 1:26-cv-3449-KES-FJS (HC), 2026 WL 2254385, at *4 n.4 (E.D. Cal. Aug. 4, 2026) (same); *see also Gagik T. v. Chestnut*, No. 1:26-cv-04337-MWJS, 2026 WL 1837413, at *2 (E.D. Cal. June 25, 2026) (concluding that the *Puga* factors weighed against imposing exhaustion where petitioner brought a procedural due process claim). Accordingly, I recommend that the motion to dismiss be denied.

Finally, respondents' argument—that petitioner's detention is lawfully governed by

section 1226 and that he must request a bond hearing in immigration court—does not address whether his detention violates the Fifth Amendment. *See* ECF No. 1 at 7. Accordingly, I will address petitioner's due process argument.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

It appears that petitioner has never previously been detained and released from custody by immigration authorities. This distinguishes his case from many prior cases in which release from immigration custody, whether on parole, supervision, or own recognizance, conferred a liberty interest in continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

However, other immigration statuses, like lawful permanent residence and deferred action status, have been found to confer such a liberty interest even without a prior detention. For example, courts have found that lawful permanent resident status confers a constitutionally protected liberty interest under the due process clause. *See Burton v. Larose*, No. 3:26-cv-2627-JES-BJW, 2026 WL 1256875, at *2-3 (S.D. Cal. May 7, 2026); *B.R. v. Warden*, No. 1:26-cv-0810-TLN-CSK, 2026 WL 1091489, at *2 (E.D. Cal. Apr. 22, 2026); *Amezcua v. Noem*, No. 5:26-cv-1070-SRM-AGR, 2026 WL 1048212, at *6 (C.D. Cal. Mar. 25, 2026); *Galvan Maldonado v. Andrews*, No. 1:26-cv-1451-DJC-JDP, 2026 WL 1864622 (E.D. Cal. June 29, 2026). Courts came to this conclusion based on the breadth of case law finding that LPRs have protected liberty interests in maintaining ties with their community and remaining free from governmental restraint. *See Amezcua*, 2026 WL 1048212, at *6 (collecting cases). For example, the Supreme Court has held that LPR status "carries several important privileges: he may remain in the United States indefinitely; he is free to work in this country; he may return to this country after a temporary absence abroad; and he has the privilege of establishing a permanent residence

in the United States." *Saxbe v. Bustos*, 419 U.S. 65, 72 (1974). Notably, LPRs "do not lose their due process protections and liberty interest merely because they are subject to removal." *Amezcua*, 2026 WL 1048212. On the contrary, LPRs are "lawfully present in the United States until a final deportation or removal order is entered." *Kyong Ho Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010).

Similarly, district courts have consistently found that a noncitizen with deferred action status has a protected liberty interest under the Due Process Clause. *See Benitez-Umanzor v. Jackson Par. Corr. Ctr.*, No. 26-cv-0940, 2026 WL 948795, at *2 (W.D. La. Apr. 8, 2026) (collecting cases); *Ramirez v. Warden of Golden State Annex Det. Facility*, No. 1:26-cv-2544-DAD-AC, 2026 WL 1078250 (E.D. Cal. Apr. 21, 2026) (finding that terminated DACA status had conferred procedural due process rights to notice and individualized assessment prior to immigration detention); *Fugon v. Chestnutt*, No. 1:26-cv-1841-DC-AC, 2026 WL 878616, at *6 (E.D. Cal. Mar. 31, 2026) (finding that the petitioner "demonstrated a likelihood of success on the merits of his claim that his detention without process violated his property interest in the deferred action he is entitled to by his Bona Fide Determination"); *Juarez v. Noem*, No. 2:26-cv-0801-DC-CKD, 2026 WL 799976, at *7 (E.D. Cal. Mar. 23, 2026) (finding that the petitioner "is likely to succeed on the merits of her claim that her removal from the United States violated her due process interest in her DACA status").

For similar reasons, courts have found that TPS confers a liberty interest in being free from detention that is afforded procedural due process protection. *See Morales Jimenez v. Warden*, No. 1:26-cv-2867-DAD-AC, 2026 WL 1075841, at *1 (E.D. Cal. Apr. 21, 2026); *Majano Mendoza v. Andrews*, No. 1:26-cv-1976-DAD-CSK, 2026 WL 747344, at *2 (E.D. Cal. Mar. 17, 2026); *see also Hernandez Lazo v. Noem*, 818 F. Supp. 3d 328, 346 (E.D.N.Y. 2026). This is because petitioner's receipt of TPS reflects a prior determination that he was not flight risk or a danger to the community. *See Morales Jimenez*, 2026 WL 1075841, at *1.

While petitioner was on TPS, he obtained work authorization, had a U.S. citizen child, and formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. This provided him a "powerful interest . . . in his continued liberty." *Garcia v. Andrews*, No. 2:25-cv-1884-

TLN-SCR, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) (considering liberty interest "powerful" where petitioner was living with family out of custody for two years). I recommend finding that petitioner's TPS status created a constitutionally protected liberty interest in continued release.

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in his continued release that developed over several years during his TPS. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to granting petitioner TPS, the government necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Morales Jimenez*, 2026 WL 1075841, at *1; *see also Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond

hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, they give the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty. *See id*. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). In fact, respondents indicate that they would have provided petitioner a bond hearing if he had properly asked for one, but they have not done so in response to his petition. *See* ECF No. 6 at 2-3. To the extent that the government maintains that petitioner is eligible for a bond hearing, it is unknown why the government has not facilitated such a hearing in light of petitioner initiating this action in August 2026. *See Ferdinand v. Warden*, No. 1:26-cv-0186-DJC-JDP, 2026 WL 1536774, at *3 (E.D. Cal. June 1, 2026).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release or a bond hearing. ECF No. 1 at 8. Respondents do not discuss the matter. ECF No. 6.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up).

Here, petitioner was arrested in May 2023 for serious charges. ECF No. 6 at 20. Notwithstanding the seriousness of those allegations, the prosecutor dismissed the most serious charges on January 23, 2024, in return for a *no lo contendere* plea to the crime of attempted burglary of a dwelling. *Id.* at 16, 17. That same day, a state court judge placed petitioner on probation and withheld adjudication for the crime, meaning that the judge determined "that the defendant is not likely again to engage in a criminal course of conduct and that the ends of justice and the welfare of society do not require that the defendant presently suffer the penalty imposed by law. . ." under Florida Statute § 948.01(2). *See* ECF No. 6 at 16. Petitioner continued on probation, with valid TPS, until April 30, 2026, when USCIS denied his renewal application. Respondents have provided no evidence that USCIS denied renewal of petitioner's TPS status for the offense discussed above. Petitioner continued on state probation until July 10, 2026, when he was arrested at the probation office by ICE officers and taken into immigration custody. ECF No. 6 at 13.

As petitioner was on probation when ICE detained him, and was detained at the probation

office, there appears to have been no "necessity of quick action" by ICE to take him into immigration custody without a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. Because petitioner's re-detention implicates due process concerns, the government would have needed to show by clear and convincing evidence that he is a danger to the community or a flight risk. *See Martinez v. Clark* 124 F.4th 775, 780 (9th Cir. 2024); *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 n.9 (collecting cases).

Under these circumstances, I find that the "typical remedy" of release, *see Munaf*, 553 U.S. at 693, is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025). Accordingly, I find that the appropriate remedy is release from custody.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondents' motion to dismiss, ECF No. 6, be DENIED.

3. Respondents be ordered to immediately release petitioner (A-Number: 243-052-225) from their custody. Respondents shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondents may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

4. The Clerk of Court be directed to serve California City Detention Facility with a copy

of this order.

5. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: September 11, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE